# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

Date of Arrest: April 30, 2025

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff,<br><br>vs.<br><br>Cristian Alvarez Fuentes,<br>Defendant.<br><br>YOB: 1996<br>United States Citizen | ) Magistrate's Case No. **25-01545MJ**<br>)<br>) COMPLAINT FOR VIOLATION OF<br>)<br>) COUNT ONE: 21 U.S.C. §§ 841(a)(1)<br>) and (b)(1)(A)(vi)<br>) Possession with Intent to<br>) Distribute Fentanyl<br>)<br>) COUNT TWO: 21 U.S.C. §§ 841(a)(1)<br>) and (b)(1)(A)(ii)(II)<br>) Possession with Intent to<br>) Distribute Cocaine<br>)<br>) COUNT THREE: 18 U.S.C. §<br>) 924(c)(1)(A)(i)<br>) Possession of a Firearm in<br>) Furtherance of/Use of a Firearm<br>) During and in Relation to a Drug<br>) Trafficking Offense |

I, the undersigned, complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

## COUNT ONE

On or about April 30, 2025, in Yuma, Arizona, within the District of Arizona, the defendant, CRISTIAN ALVAREZ FUENTES, did knowingly and intentionally possess with the intent to distribute approximately 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi) (felony).

## COUNT TWO

On or about April 30, 2025, in Yuma, Arizona, within the District of Arizona, the defendant, CRISTIAN ALVAREZ FUENTES, did knowingly and intentionally possess with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of isomers, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii)(II)(felony).

COUNT THREE

On or about April 30, 2024, in Yuma, Arizona, within the District of Arizona, the defendant, CRISTIAN ALVAREZ FUENTES, did knowingly carry and use a firearm during and in relation to a drug trafficking crime, and did knowingly possess a firearm in furtherance of a drug trafficking crime, that is, Possession with Intent to Distribute Fentanyl as alleged in Count 1 of this Complaint, and Possession with the Intent to Distribute Cocaine as alleged in Count 2 of this Complaint, both felony crimes prosecutable in a Court of the United States.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

I further state that this complaint is based on the attached Statement of Facts incorporated herein by reference.

Reviewed by: AUSA Vanessa Kubota for AUSA Chong-Ho Chung

VK

_____
Elijah Petty
Special Agent
Drug Enforcement Administration


Sworn telephonically before me, May __1__, 2025 at Yuma, Arizona.


_____
James F. Metcalf
United States Magistrate Judge

## STATEMENT OF FACTS

I, Special Agent Elijah Petty, Drug Enforcement Administration, being duly sworn, declare the following:

## INTRODUCTION AND BACKGROUND AFFIANT

1.    I am a Special Agent with the Drug Enforcement Administration (DEA).  I have been employed with the DEA since January of 2024, and I have been responsible for investigating violations of federal law including violations of the Controlled Substances Act.  I am a United States "investigative or law enforcement officer" as set forth 18 U.S.C. § 2510(7), and I am authorized by law to conduct investigations and make arrests for offenses delineated in 18 U.S.C. § 2516.

2.    I was trained as a DEA Special Agent at the DEA Academy in Quantico, Virginia.  During my sixteen-week training, I received specialized training in the Controlled Substance Act, Title 21 United States Code, including, but not limited to, Sections 841(a)(1) and 846 Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations.  I received training related to criminal organizations engaged in conspiracies to manufacture and/or possess with intent to distribute marijuana, cocaine, cocaine base, heroin, methamphetamine, fentanyl and other dangerous drugs prohibited by law. I received training regarding the Fourth Amendment and search and seizure law.  I was also trained in Confidential Source (CS) management and investigative techniques, and numerous other facets pertaining to the criminal investigation of illicit drugs.

3.    During the course of my employment as a DEA Special Agent, I have participated in numerous criminal investigations and have gained knowledge and experience by working with other agents and peace officers.  I have participated in multiple incidents involving the seizure of some of the aforementioned listed controlled substances. I have utilized numerous investigative techniques and resources and draw on the experience, techniques, and resources I have gained in my current employment as a DEA Special Agent.

4.    In preparing this Affidavit, I conferred with other law enforcement officials, who share the opinions and conclusions stated herein.   I have personal knowledge of the following facts or have learned them from other law enforcement officers.   I also relied on my training, experience, and background in law enforcement to evaluate this information.   Since this Affidavit is being submitted for the limited purpose of establishing probable cause for a complaint, I have not included each and every fact or source of information establishing the violation of federal law.

## PROBABLE CAUSE

5.    On April 30, 2025, Arizona Department of Public Safety Trooper Cristian Cerda was parked in the median on Interstate 10, milepost 27 in his marked patrol car. Trooper Cerda was monitoring westbound traffic when he observed a gray four door passenger vehicle traveling at a high rate of speed. Trooper Cerda then visually estimated the vehicle to be at approximately 90 miles per hour (mph) in a posted 75 mph zone. Trooper Cerda then utilized his department issued lidar which showed a display of 91 mph. Trooper Cerda then departed his location in the median and proceeded westbound in order to catch up to the vehicle. At approximately 10:27 am, Trooper Cerda activated his emergency lights to conduct a traffic stop on interstate 10, milepost 24, westbound on the vehicle he observed traveling at 91 mph.

6.    Trooper Cerda approached the vehicle from the passenger side and observed a man in the driver seat. The driver only rolled down the passenger side window about one third of the way down. Trooper Cerda explained the reason for the stop. The driver provided Trooper Cerda with his driver's license, registration, and expired insurance card. The driver's license identified him as Cristian Alvarez FUENTES. Trooper Cerda asked FUENTES where he was going and where he was coming from. FUENTES stated he was traveling back home to Washington after visiting his cousin in Phoenix.

7.    Trooper Cerda asked FUENTES if he had any weapons, drugs, or alcohol. FUENTES gave Trooper Cerda a blank stare, paused, and then

said "no". Based on Fuentes only rolling down the passenger window one third of the way, his short answers, and the long stare and long pause when asked about weapons, drugs, or alcohol in the vehicle, Trooper Cerda told FUENTES he was going to have him step out of the vehicle, walk back, and stand next to the passenger side of the patrol vehicle.

8. Trooper Cerda contacted Trooper S. Floyd to assist him with the traffic stop. Trooper Cerda then ran FUENTES's license and the vehicle registration in a law enforcement database that revealed FUENTES's license to be suspended for drugs and failure to pay fines. FUENTES then spontaneously told Trooper Cerda that he had hit a deer the night prior and Trooper Cerda observed FUENTES getting nervous.

9. Trooper Cerda then asked FUENTES if there was anything in the vehicle and FUENTES said "no". Trooper Cerda then asked FUENTES if he would consent to a vehicle search and FUENTES said, "not currently right now, I don't like it." Trooper Cerda asked FUENTES if there was a reason as to why he did not want him to search his vehicle, and he said because he might have a weapon in the vehicle but it's in the trunk. Trooper Cerda asked FUENTES why he had initially said "no" when had already been asked earlier whether he had any weapons, drugs, or alcohol in the vehicle. FUENTES explained that he said that because he had gotten nervous.

10. At approximately 10:37 am, Trooper Cerda placed FUENTES under arrest for misconduct involving weapons. After putting handcuffs on FUENTES, Trooper Cerda secured FUENTES in the rear seat of his patrol car. At that time, Trooper Floyd checked the trunk of the vehicle for the weapon, and he had observed drugs in the trunk.

11. At approximately 10:41 am, Trooper Cerda read FUENTES his *Miranda* Rights and asked him if he understood his rights. FUENTES said "yes". Trooper Cerda asked FUENTES if he would answer any questions and FUENTES said "no".

12. In a more thorough search of the vehicle, Trooper Cerda and Trooper Floyd found four zip lock bags containing blue M30 pills, which based off Trooper Cerda's training and experience he recognized they

are likely to be fentanyl pills; four plastic wrapped bricks containing a white, powdery substance; a Kalashnikov rifle with an empty magazine all in the trunk of the vehicle. They also found Glock handgun loaded with one round in the chamber and 9 rounds in the magazine located behind the driver's seat.

13. FUENTES, his car, and all evidence was then transported to the Department of Public Safety Quartzite office. From the Quartzite office, investigators from the Drug Enforcement Administration (DEA) Yuma Resident Office took custody of the drug and weapon evidence and transported it to the Yuma DEA office for processing.

14. After official processing, the blue M30 pills had a combined weight of 4.0 kilograms. The bricks of powdery white substance field tested positive for cocaine and had a combined weight of 5.46 kilograms. Trooper Cerda transported FUENTES to the DEA Yuma office for official booking and then transported FUENTES to the San Luis Regional Detention Center for detainment.

15. Based on the foregoing, there is probable cause to believe ALVAREZ FUENTES committed the offense as alleged in the Complaint.

_____
Elijah Petty
Special Agent
Drug Enforcement Administration


Sworn to before me and subscribed telephonically on May __1__, 2025.

_____
James F. Metcalf
United States Magistrate Judge